# UNITED STATES DISTRICT COURT

for the

Southern District of Indiana

**SEALED**

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched<br>or identify the person by name and address)*<br>Two cell phones described in Attachment A | )<br>)<br>)   Case No. 1:20-mj-0333<br>)<br>)<br>) |

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A, incorporated by reference herein.

located in the   Southern   District of   Indiana  , there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B, incorporated by reference herein.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☑ contraband, fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| Title 21, United States Code, Sections 841(a)(1), 843(b), 846 | Possession w/ Intent to Distribute & Distribution of Controlled Substances; Unlawful Use of a Communication Facility; Conspiracy to Distribute Controlled Substances |

The application is based on these facts:

See attached affidavit, incorporated by reference herein.

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days *(give exact ending date if more than 30 days:* _____ *)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

/s/ Brent Arthur
*Applicant's signature*

Brent Arthur, DEA Special Agent
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by
 telephonic   *(specify reliable electronic means)*.

Date:  03/24/2020 

City and state:  Indianapolis, Indiana 

[signature]

Tim A. Baker
United States Magistrate Judge
Southern District of Indiana

I, Brent Arthur, a Special Agent with the Drug Enforcement Administration (DEA), Indianapolis, Indiana, being duly sworn, state as follows:

## INTRODUCTION

1. I, Brent Arthur, am an "investigative or law enforcement officer" within the meaning of Title 18, United States Code, Section 2510 (7), that is, an officer of the United States who is empowered by law to conduct investigations of, and to make arrests for, offenses enumerated in Title 18, United States Code, Section 2516.

2. I have been employed as a Special Agent with the DEA since 2010. I am currently assigned to the DEA Indianapolis District Office (IDO) and have been so assigned since 2017. The DEA IDO is a multi-agency task force that investigates major drug trafficking organizations. The DEA IDO is comprised of Special Agents and/or Officers from the DEA, Brownsburg Police Department, Bartholomew County Sheriff's Department, Indiana State Police, Bloomington, Indiana Police Department, and the Cumberland, Indiana Police Department. As a DEA SA, I have investigated illicit controlled substance trafficking in central Indiana and elsewhere. I have had formal training and experience in controlled substance investigations and am familiar with the manner in which controlled substances are packaged, marketed, and consumed. I have received training in the identification of the various types of controlled substances. During the course of my employment, I have become familiar with the ordinary meaning of controlled substance slang and jargon. I am familiar with the manners and techniques of traffickers in controlled substances as practiced locally and elsewhere. I have participated in several aspects of drug investigations including electronic surveillance, debriefing defendants, informants and witnesses, conducting surveillance, and the execution of judicially authorized

search warrants. I have been involved in more than one-hundred arrests for drug possession and/or dealing controlled substance violations. In connection with my official DEA duties, I investigate criminal violations of the federal narcotics laws, including, but not limited to, Title 21, United States Code, Sections 841, 843, 846, and 848. I have received special training in the enforcement of laws concerning controlled substances as found in Title 21 of the United States Code.

    3.    As this Affidavit is for the limited purpose supporting the request for a search warrant for the specified electronic devices, it contains only those facts necessary and relevant to establish the probable cause supporting issuance of the warrant. It does not contain each and every fact known to me concerning the entities, individuals, and events described herein.

    4.    This Affidavit is made in support of an application to obtain a search warrant for the following electronic devices, located within the Southern District of Indiana and described more fully in Attachment A, for the items described in Attachment B: a white iPhone recovered from Torrey JONES' vehicle on March 12, 2020 ("**JONES PHONE 1**"), and a black cell phone recovered from JONES' vehicle on March 12, 2020 ("**JONES PHONE 2**"). The term "**TARGET PHONES**" will be used to collectively describe these two cell phones.

## BACKGROUND REGARDING CELL PHONES

    5.    <u>Background Regarding Cell Phones</u>: Based on my training and experience, I use the following technical terms to convey the following meanings:

    a.    <u>Wireless telephone</u>: A wireless telephone (or mobile telephone, or cellular telephone) is a handheld wireless device used for voice and data communication through radio signals. These telephones send signals through networks of transmitter/receivers,

enabling communication with other wireless telephones or traditional "land line" telephones. A wireless telephone usually contains a "call log," which records the telephone number, date, and time of calls made to and from the phone. In addition to enabling voice communications, wireless telephones offer a broad range of capabilities. These capabilities include: storing names and phone numbers in electronic "address books;" sending, receiving, and storing text messages and e-mail; taking, sending, receiving, and storing still photographs and moving video; storing and playing back audio files; storing dates, appointments, and other information on personal calendars; and accessing and downloading information from the Internet. Wireless telephones may also include global positioning system ("GPS") technology for determining the location of the device.

      b.     <u>GPS</u>: A GPS navigation device uses the Global Positioning System to display its current location. It often contains records the locations where it has been. Some GPS navigation devices can give a user driving or walking directions to another location. These devices can contain records of the addresses or locations involved in such navigation. The Global Positioning System (generally abbreviated "GPS") consists of 24 NAVSTAR satellites orbiting the Earth. Each satellite contains an extremely accurate clock. Each satellite repeatedly transmits by radio a mathematical representation of the current time, combined with a special sequence of numbers. These signals are sent by radio, using specifications that are publicly available. A GPS antenna on Earth can receive those signals. When a GPS antenna receives signals from at least four satellites, a

computer connected to that antenna can mathematically calculate the antenna's latitude, longitude, and sometimes altitude with a high level of precision.

   c. <u>IP Address</u>: An Internet Protocol address (or simply "IP address") is a unique numeric address used by computers on the Internet. An IP address is a series of four numbers, each in the range 0-255, separated by periods (e.g., 121.56.97.178). Every computer attached to the Internet computer must be assigned an IP address so that Internet traffic sent from and directed to that computer may be directed properly from its source to its destination. Most Internet service providers control a range of IP addresses. Some computers have static-that is, long-term-IP addresses, while other computers have dynamic-that is, frequently changed-IP addresses.

   d. <u>Internet</u>: The Internet is a global network of computers and other electronic devices that communicate with each other. Due to the structure of the Internet, connections between devices on the Internet often cross state and international borders, even when the devices communicating with each other are in the same state.

   e. <u>PDA</u>: A personal digital assistant, or PDA, is a handheld electronic device used for storing data (such as names, addresses, appointments or notes) and utilizing computer programs. Some PDAs also function as wireless communication devices and are used to access the Internet and send and receive e-mail. PDAs usually include a memory card or other removable storage media for storing data and a keyboard and/or touch screen for entering data. Removable storage media include various types of flash memory cards or miniature hard drives. This removable storage media can store any digital data. Most PDAs run computer software, giving them many of the same

capabilities as personal computers. For example, PDA users can work with word-processing documents, spreadsheets, and presentations. PDAs may also include GPS technology for determining the location of the device.

      f.      <u>Digital camera</u>: A digital camera is a camera that records pictures as digital picture files, rather than by using photographic film. Digital cameras use a variety of fixed and removable storage media to store their recorded images. Images can usually be retrieved by connecting the camera to a computer or by connecting the removable storage medium to a separate reader. Removable storage media include various types of flash memory cards or miniature hard drives. Most digital cameras also include a screen for viewing the stored images. This storage media can contain any digital data, including data unrelated to photographs or videos.

      g.      <u>Portable media player</u>: A portable media player (or "MP3 Player" or iPod) is a handheld digital storage device designed primarily to store and play audio, video, or photographic files. However, a portable media player can also store other digital data. Some portable media players can use removable storage media. Removable storage media include various types of flash memory cards or miniature hard drives. This removable storage media can also store any digital data. Depending on the model, a portable media player may have the ability to store very large amounts of electronic data and may offer additional features such as a calendar, contact list, clock, or games.

      h.      <u>SMS (Text messages)</u>: SMS messages (or "text messages") are communications sent between cellular telephone users. Text messages may be stored on a cellular telephone.

6. Based on my training, experience, and research, and from consulting the manufacturer's advertisements and product technical specifications available online at all major cellular providers' websites, I believe that many cell phones, including the **TARGET PHONES**, have capabilities that allow them to serve as wireless telephones, GPS navigation devices, PDAs, digital cameras, and portable media players. In addition, I believe many cell phones, including the **TARGET PHONES**, allow for the use of the internet including the storage and use of IP addresses. In my training and experience, examining data stored on a device of this type can uncover, among other things, evidence that reveals or suggests who possessed or used the device.

7. Based on my knowledge, training, and experience, and observations during this investigation, I know that electronic devices such as the **TARGET PHONES** can store information for long periods of time. This information can sometimes be recovered with forensics tools.

8. <u>Forensic evidence</u>. As further described in Attachment B, this application seeks permission to locate not only electronically stored information on the **TARGET PHONES** that might serve as direct evidence of the crimes described herein, but also forensic evidence that establishes how these devices were used, the purpose of their use, who used them, and when. There is probable cause to believe that this forensic electronic evidence might be on such devices because:

    a. Data on the storage medium can provide evidence of a file that was once on the storage medium but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file).

b. Forensic evidence on a device can also indicate who has used or controlled the device. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence.

c. A person with appropriate familiarity with how an electronic device works may, after examining this forensic evidence in its proper context, be able to draw conclusions about how electronic devices were used, the purpose of their use, who used them, and when.

d. The process of identifying the exact electronically stored information on a storage medium that are necessary to draw an accurate conclusion is a dynamic process. Electronic evidence is not always data that can be merely reviewed by a review team and passed along to investigators. Whether data stored on a computer or electronic device is evidence may depend on other information stored on the computer or electronic device and the application of knowledge about how a computer or electronic device behaves. Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrants.

e. Further, in finding evidence of how a device was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is not present on a storage medium.

9. <u>Nature of examination</u>. Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant I am applying for would permit the examination of the seized electronic devices consistent with the warrant. The examination may require authorities to employ techniques, including but not limited to computer-assisted scans of the entire medium, that might

7

expose many parts of the device to human inspection in order to determine whether it is evidence described by the warrant.

10. <u>Manner of execution</u>. As of the date of the submission of this application, the **TARGET PHONES** are in law enforcement custody within the Southern District of Indiana. As such, it is reasonable to permit the requested searches at any time of day or night.

## BASIS OF INFORMATION

11. <u>Basis of Information</u>. I make this affidavit based upon personal knowledge derived from my participation in this investigation and upon information I believe to be reliable from the following sources: my experience investigating drug trafficking; oral and written reports, and documents about this investigation that I have received from members of DEA, local law enforcement, and other federal law enforcement agencies; discussions I have had personally concerning this investigation with experienced drug investigators; physical and/or electronic surveillance conducted by DEA and local law enforcement agencies, the results of which have been reported to me either directly or indirectly; public records; and, telephone records.

## FACTS ESTABLISHING PROBABLE CAUSE

12. On March 12, 2020, at approximately 3:50 p.m., Brownsburg Police Department (BPD) Officer Dirk Fentz conducted a traffic stop at or around the 60 mile marker of I-70 eastbound (within the Southern District of Indiana, Indianapolis Division) on a maroon Kia bearing Illinois license plate BP81382 for unsafe lane movement. The stopping officer approached the driver and identified him as Torrey JONES. During a search of the vehicle (following a positive narcotics canine alert), officers located a sum of U.S. Currency in the center console. JONES told officers that he had $8,000.00 in the vehicle and that he had just come from the casino. JONES first told officers that he was travelling to Indianapolis to visit his cousin and

later said he was visiting his buddy to "hang out for just a minute." Officers did not seize the currency, and JONES was issued a warning ticket for the traffic violation. The stop was concluded, and JONES departed in the Kia.

13. Following this incident, investigators conducted surveillance on the maroon Kia. They observed it travel to Indianapolis, Indiana, and JONES meet with several other rental vehicles. Investigators were unable to observe any exchange by JONES. Investigators observed the Kia depart Indianapolis and travel westbound on I-70.

14. That same day (March 12, 2020), at approximately 7:00 p.m., BPD Officer Fentz conducted a traffic stop at or around the 61 mile marker of I-70 westbound (within the Southern District of Indiana, Indianapolis Division) on the maroon Kia for following too close and unsafe lane movement. Officer Fentz approached the driver and identified him as JONES. Officer Fentz called for K9 Officer Tom Owens of the Avon Police Department. K9 Officer Owens and his canine partner[1] conducted an open air sniff of the vehicle. Officer Owens notified Officer Fentz that his canine partner gave a positive indication for the odor of narcotics.

15. Corporal Maples arrived on scene to conduct a search of the vehicle with Officer Owens. During the search of the vehicle, approximately 1,132 grams of suspected methamphetamine was located in the center console. The substance was later field-tested for the presence of methamphetamine and did not give a conclusive positive.

16. Sgt. Pyatt of the Brownsburg Police Department was on scene and read JONES his Miranda Rights. JONES agreed to speak with Sgt. Pyatt. JONES stated that a guy that he

---

[1] K9 Nero has been annually certified through the Marion County Sheriff's Department and the Hendricks County Sheriff's Department since 2016. His certification includes the national odor recognition test.

works for moves approximately 50 to 70 pounds of methamphetamine a month. JONES stated that the methamphetamine usually comes through the mail, but due to the Coronavirus, the mail had been slow. JONES stated that he came to Indianapolis with $8,000.00 to buy two and a half pounds of methamphetamine for the unidentified male.

17. During the course of the above-described traffic stop and arrest of JONES, officers located the **TARGET PHONES** in JONES' vehicle. JONES claimed ownership of the **TARGET PHONES**. The **TARGET PHONES** were transferred into DEA Indianapolis Evidence (in the Southern District of Indiana) where they remain today.

18. On or about March 17, 2020, JONES appeared before the Honorable Doris L. Pryor for an initial appearance on a federal complaint charging him with Attempted Possession with Intent to Distribute Methamphetamine. (*United States v. Jones*, Cause No. 1:20-mj-308, Dkt. 8: Minute Order).

19. Based on my training and experience and my knowledge of this investigation to date, I know that individuals involved in criminal activity utilize cellular telephones to facilitate crimes. Specifically, I am aware that individuals involved in criminal activity utilize cellular telephones, whether through telephone conversations or text messages, as a medium to communicate with co-conspirators during the planning and commission of crimes. Drug traffickers frequently use cellular telephones to communicate with co-conspirators and associates, whether by traditional communications such as voice calls and text messages, or non-traditional communications, such as Facebook, WhatsApp, and other social media applications.

## CONCLUSION

20.     Based upon the foregoing, I respectfully submit that probable cause exists to believe that evidence, contraband, instrumentalities, and/or fruits of the above-described drug trafficking crimes are located in the **TARGET PHONES**. I respectfully request that the Court issue the proposed search warrant for said devices.

21.     I further request that the Court order that all papers in support of this application, including the affidavit and search warrant, be sealed until further order of the Court. These documents discuss an ongoing criminal investigation that is not known to all of the targets of the investigation. Accordingly, there is good cause to seal these documents because their premature disclosure may seriously jeopardize that investigation.

/s/ *Brent Arthur*
Brent Arthur
Special Agent
Drug Enforcement Administration

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by telephonic (*specify reliable electronic means*) this 24th day of March, 2020.

Tim A. Baker
United States Magistrate Judge
Southern District of Indiana

## ATTACHMENT A

### Property to Be Searched

The property to be searched are the cellular telephones described more fully as:

- A white iPhone recovered from a vehicle occupied by Torrey JONES,
- A black cell phone recovered from a vehicle occupied by JONES,

collectively referred to as TARGET PHONES. Local law enforcement seized the TARGET PHONES on or about March 12, 2020, and subsequently transferred them to the Drug Enforcement Administration Indianapolis.

This warrant authorizes the forensic examination of the TARGET PHONES for the purpose of identifying the electronically stored information described in Attachment B.

## ATTACHMENT B

### Particular Things to be Seized

This warrant authorizes the examination of the TARGET PHONES identified in Attachment A for the following records and content to the extent that is related to violations of 21 U.S.C. §§ 841, 843, and 846 by TORREY JONES and co-conspirators (collectively, "Targets") between in or around January 2020, and on or about March 12, 2020, and conspiracy to commit the same:

1. Entries in contact lists and/or address books relating to communications between the Targets concerning drug trafficking and/or drug proceeds (the "Target Activities");

2. Call logs relating to communications between the Targets concerning the Target Activities;

3. Text messages (including any photos or media exchanged) between the Targets concerning the Target Activities;

4. Email and/or chat messages between the Targets concerning the Target Activities;

5. Photos and/or videos relating to the Target Activities;

6. Global positioning system points relating to the location of the TARGET PHONE(S);

7. Evidence of user attribution showing who used or owned the TARGET PHONE(S) at the time the things described in this warrant were created, edited, or deleted, such as logs, phonebooks, saved usernames and passwords, documents, and browsing history;

8. Records of Internet Protocol addresses used;

2

9.      Records of Internet activity related to the Target Activities, including firewall logs, caches, browser history and cookies, "bookmarked" or "favorite" web pages, search terms that the user entered into any Internet search engine, and records of user-typed web addresses.

As used above, the terms "records" and "information" include all of the foregoing items of evidence in whatever form and by whatever means they may have been created or stored, including any form of computer or electronic storage (such as flash memory or other media that can store data) and any photographic form.